**Decided August 2, 1985**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

HERMAN PALACIOS and          )          CIVIL ACTION NO. 79-204A
SANTIAGO TUDELA,             )
                             )
              Plaintiffs,    )
                             )
     vs.                     )          MEMORANDUM OPINION
                             )
TRUST TERRITORY OF THE       )
PACIFIC ISLANDS,             )
                             )
              Defendant.     )
_____)

This matter was tried after a remand from the Appellate Division, District Court Northern Mariana Islands. To place this case in the proper perspective and to explain this court's treatment of the case on remand, a recitation of the procedural history of this case is necessary.

PROCEDURAL BACKGROUND

In November of 1981, motions for summary judgment were heard and decided adversely to the then plaintiff, Francisca T. Palacios. Judgment was entered in favor of all defendants.[1] The motions, points and authorities supporting and opposing the motions, the record of the oral argument and the memorandum opinion of the trial court all make it clear that four

---

[1] The defendants, in addition to the Trust Territory of the Pacific Islands, were the Commonwealth Government and the Marianas Public Land Corporation.

reasons were argued by the plaintiff in opposition to the summary judgment motions and as to why plaintiff's action should not barred by the twenty year statute of limitations, 6 TTC 311. These were: (1) There was a lack of available legal assistance for the plaintiff to assert her rights and a lack of understanding of her rights; (2) There was a misrepresentation of law by government officials; (3) There was a waiver of the statute of limitations when the Micronesian Claims Commission made an award to plaintiff's predecessors in 1975; and (4) The statute of limitations is unconstitutional on due process and equal protection grounds.

Neither the original complaint nor the amended complaint alleged any cause of action for a breach of an express trust agreement by the defendant, Trust Territory of the Pacific Islands (TTPI). Thus, no breach of trust theory was advanced or argued at the summary judgment hearing.

The plaintiff filed a timely appeal from the granting of the motion for summary judgment for the defendants. As the appellant, the plaintiff filed a brief on March 4, 1982 which essentially argued that any statute of limitations in Micronesia should be eliminated and that such a statute violates the due process and equal protection rights of the plaintiff. The other three issues raised at the summary judgment hearing were not pursued. The Trust Territory of the Pacific Islands filed a reply brief on April 5, 1982.

Thereafter nothing occurred until a judge of the appellate panel issued an order dated August 3, 1982 for the parties to

258

file supplemental briefs, citing 48 U.S.C. § 1694(b) as authority for the order. The order required the appellant and the appellee to brief the following question:

> Whether the Trust Territory of the Pacific Islands is precluded from asserting a statute of limitations defense because of its trustee relationship with and corresponding obligations to plaintiff under the Trusteeship Agreement for the former Japanese mandated islands? (emphasis added)

Consequently, the plaintiff completely changed her argument in her supplemental brief and argued the issue outlined in the order. Likewise, the Trust Territory's supplemental brief mainly addressed the issue raised in the court's order. The issues briefed and argued at the summary judgment motion in the trial court were all but ignored and forgotten.

Subsequently, the appellate court reversed the summary judgment against the plaintiff on the trust theory enunciated in the appellate court's order of August 3, 1982 and remanded the case to the trial court to consider only the issue of laches, and if that defense was not applicable, to render judgment for the amount of damages incurred by the plaintiff. The reversal was as to only the TTPI. The summary judgments in favor of the Commonwealth of the Northern Mariana Islands and the Marianas Public Land Corporation were affirmed.

After the remand, Herman Palacios was substituted in for Francisca Palacios as the plaintiff and Santiago Tudela, was added as a plaintiff.

The trial of this case did not occur for quite some time for a variety of reasons. Primarily, it was because of delays in completing discovery and obtaining experts to appraise the property.

The trial consisted of testimony of witnesses concerning the claim of Santiago Tudela to Lot 007 B 06 as designated on Plaintiffs' Exhibit 1 and testimony as to the value of Lots 007 B 04 and 007 B 06, the property used for the public highway. No evidence was offered by plaintiffs as to: (1) Any misrepresentation by government officials which caused them to delay bringing their suit; (2) Any other reason for failing to file suit until 1979.

WHAT IS THE SCOPE AND EFFECT OF THE REMAND FROM THE APPELLATE DIVISION OF THE DISTRICT COURT?

This court is troubled by what it perceives as an inappropriate use of appellate powers as well as a misconception of the functions of an appellate court. While it certainly is not up to the trial court to object to the reasoning of any appellate decision which properly changes or modifies the trial court's judgments, it is felt that the unusual, if not unprecedented, procedure followed here places in question the effect and precedential value of the appellate court's decision.

48 U.S.C. § 1694(b) provides authority for one judge of the appellate court to issue only _appropriate_ orders pending appeal. Typical of such orders are ones extending time to file briefs, to dismiss the appeal for failure to prosecute same or to dismiss the appeal for want of jurisdiction. See also, Rules of Appeal 23(a).

The District Court has only such appellate jurisdiction as the Constitution or laws of the Northern Mariana Islands may provide. Section 402(c), Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant).

Title 1, section 3302 of the Commonwealth Code provides for the appellate power of the Appellate Division of the District Court.

> "On appeal, the District Court for the Northern Mariana Islands may affirm, modify, vacate, set aside or reverse the judgment, order or decree appealed from, and remand the cause and direct the entry of such appropriate judgment, order or decree as may be just under the circumstances, but the District Court for the Northern Mariana Islands may not take new or additional evidence, consider the issues of fact de novo, or set aside findings of fact by the Commonwealth Trial Court unless they are clearly erroneous, and due regard shall be given to the opportunity of the trier of fact to judge the credibility of the witnesses." (emphasis added)

It is not only a general rule but an almost universal rule that appellate courts will normally only consider questions which were raised and reserved in the lower court. 5 AmJur2d, _Appeal and Error_, § 545. Corollary to this rule is the rule that the reviewing court will consider the case only upon the theory which was tried in the court below. 5 AmJur2d, _Appeal and Error_, § 546.

Except where a statute allows a trial de novo, appellate review is generally limited to the examination and revision of the proceeding below, and the appellate court will not consider matters not presented to the lower court. 5 AmJur2d, _Appeal and Error_, § 726.

261

Certain exceptions to these rules have developed where there are fundamental errors and gross irregularities. A review of those exceptions (5 AmJur 2d, _Appeal and Error_, §§ 548-552) reveals no support here for the _appellate court_ to raise completely new factual and legal issues and not the _appellant_.

The Order of August 3, 1982 is troublesome in three respects. First, it does not appear to be an appropriate order for one judge to make. Second, the court raises an issue in conflict with the above referenced general rules. Third, and probably the most important is that the question framed by the court order expressly makes a finding of fact and a conclusion of law by the one judge of the appellate panel which is directly contrary to 1 CMC § 3302. What the order assumes as a fact is that the Trust Territory is a trustee and, it is concluded, the Trust Territory Government owes a fiduciary duty to the plaintiff. A de novo review, finding and conclusion are all encompassed in the August 3, 1982 order.

The problems this court perceives with the August 3, 1982 order are then compounded by the decision of the appellate court. What was lost sight of was that plaintiff's appeal was from the granting of a motion for summary judgment.

On appeals from summary judgment, the standard of review and the only question for appellate review is whether the allegations in the pleadings raise a material or genuine issue of fact. _United States v Gammachi_, 713 F2d 588; _Portis v Folk Constr. Co. Inc._, 694 F2d 520; _Luckett v Bethelehem Steel Corp._, 618 F2d

1373; Vette Company v Aetna Casualty & Surety Co., 612 F2d 1076; Ed Houser Ent., Inc. v General Motors Corp., 595 F2d 366; 5 AmJur2d, Appeal and Error, § 853.

The appellate court is not called upon to decide factual issues on appeals from summary judgment, but shall only determine whether there may be factual issues to be tried.

McPhee v Tyrone, 489 F2d 718;

Slagle v United States, 228 F2d 673.

If there is a remand from a granting of a summary judgment, the remand shall be for a full trial. Smith v U.S., 362 F2d 366; 2 ALR Fed 1021.

A court of appeals can affirm a summary judgment on any ground that appears from the record, whether or not the trial court relied on it.

Rubinstein v Bay, 433 F2d 1021;

Sellers v Regents, 432 F2d 493.

The limits of review of an appellate court on the granting of a summary judgment is further set forth at 10 Wright & Miller, § 2716. In sum, the appellate court cannot simply substitute a judgment for the appellant. 10 Wright & Miller, § 2716 at pg. 656.

The reversal by an appellate court of a summary judgment is binding only with respect to the existence of a genuine triable controversy and is not a blueprint for all subsequent proceedings upon remand. Ernst, Inc. v General Motors Corp., 537 F2d 105. It is error for the appellate court to enter an order on a new

263

issue in favor of a party who had lost in the trial court and who had not there moved for relief.

Fountain v Filson, 336 U.S. 681, 69 S.Ct. 754;

Ernst v General Motors Corp., supra;

Heirs of Fruge v Blood Services, 506 F2d 841.

If an argument is not raised by the appellant in the trial court on a motion for summary judgment, the appellate court shall not review it.

Ed Houser Enterprises v Gen. Motors Corp., supra.

In essence and in summary, the appellate court, on its own motion, proceeded to hear a summary judgment motion for appellant on a new theory and new issue framed on a finding of fact and conclusion of law made at the appellate level. The decision of the appellate panel, in effect, entered a new and opposite summary judgment ignoring the universal standard of review for appellate courts on summary judgments. The appellate panel acted as a law and motion trial court, entertaining theories, arguments and points and authorities not considered by the lower court.

Consistent with the authority of Fountain v Filson, supra, and the progeny from that case, this court should only construe the mandate as a ruling that a genuine issue of fact remains.

This court now has the benefit of the thinking of the appellate court in so far as a trust relationship is concerned between the plaintiff and defendant. As indicated above, this, of course, is not a blueprint for subsequent proceedings and can properly be ignored. But should the same panel hear any new appeal from this judgment, it would be folly to ignore what the

264

panel was saying even if this court concludes (as it does) that the lengthy dissertation about the trust relationship was extraneous and of no moment in determining the appropriateness of the summary judgment entered by the trial court.[2]

---

2/
Although the outcome of the resolution of the trust relationship between the plaintiff and the defendant was fore-ordained by the question posed in the August 3, 1982 order, it is apparent the panel had a difficult time in squaring whatever facts that were in the record with the trust theory espoused.

On page 2 of the opinion it states:

> "Palacios (plaintiff) seeks compensation under the Trusteeship Agreement and the Trust Territory Bill of Rights due process cause for the 1944 taking by the United States of land owned by . . . Juan Tudela."

No such request, pleading, or prayer is found in the original complaint or amended complaint. Plaintiff's complaint is against the various defendants because they took or assumed possession of plaintiff's land and didn't pay any compensation for the land. No cause of action is alleged based on the Trusteeship Agreement and, indeed, it isn't even mentioned in the original complaint or amended complaint.

The appellate panel concluded that the Trusteeship Agreement "... creates an express trust at least to land in the islands." Slip Opinion, page 14.

Of course, if such is the case, then the express trust must fit into the definition and elements of the Restatement of Trust 2d, since that is the law governing trusts in the Commonwealth unless there are specific statutes (there are none). 7 CMC § 3401. Section 2 of the Restatement of Trusts defines a fiduciary relationship and states that it must arise as a result of a manifestation of an intention to create it. Section 2(h) sets forth three elements: (1) a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; (2) a beneficiary, to whom the trustee owes equitable duties to deal with the trust property for his benefit; (3) trust property, which is held by the trustee for the beneficiary.

Section 2(k) states: A trust cannot be created unless there is trust property in existence and ascertainable at the time of the creation of the trust.

Section 3 sets forth the requirements for an express trust. There must be a settlor who creates the trust. The property held in trust is the trust property. The person holding property in trust is the trustee. The person for whose benefit property is held in trust is the beneficiary.

The problems of fitting the participants of this lawsuit into the framework of the Restatement are obvious. There is no pretense nor has any other court ever held that the Trusteeship Agreement manifests an intention to establish an express trust between the Trust Territory Government as trustee and the plaintiff and other landowners in the Trust Territory as beneficiaries. The Trust Territory Government is not even mentioned in the Trusteeship Agreement. Nor does the Trusteeship Agreement designate or delineate the trust property. Is the settlor of any "trust" the United States? If so, how can it declare itself to be the trustee of plaintiffs' land which the United States had taken three years before the "Trust Agreement" was executed? How can an entity such as the Trust Territory be substituted in as trustee several years later at the time that the United States, the plaintiffs' predecessor, and the TTPI maintained positions exactly contrary to any fiduciary relationship?

The result of the trust theory and liability of the TTPI as found by the appellate court also presents quite a legal paradox.

It is very doubtful if the plaintiffs have any viable cause of action against the real "culprit", the United States, even if the United States could be regarded as a "trustee". Menominee Tribe of Indians v United States, 726 F2d 718; Capoeman v United States, 440 F2d 1002; 28 U.S.C. § 2501; Camacho v United States, 494 F2d 1363; Kabua v United States, 546 F2d 381. ( Kabua also held that the Trusteeship Agreement is a treaty and not an express trust).

Yet, the result of the appellate decision is to impose liability on a surrogate or substitute trustee which was not in existence at the time of the taking or at the time of the formation of the Trusteeship Agreement.

If the TTPI is liable for damages for violating the trust, then recovery against that government must be based on 6 TTC § 251 which authorizes certain claims against the TTPI accruing after September 23, 1967 in the Trust Territory High Court. Any judgments rendered pursuant to § 251 are paid from funds to be appropriated by the Congress of Micronesia, an entity which went out of existence a number of years ago.

266

DOES LACHES BAR THE PLAINTIFFS FROM RECOVERING DAMAGES?

The appellate court observed the general rule to be that the statute of limitations does not begin to run against the beneficiary until the trust is repudiated and knowledge is acquired of the repudiation by the beneficiary. Citing Connell v U.S. Steel Corp., 516 F2d 401, 408, (5th Cir. 1975); Restatement, Second, Trusts, § 219; Accord, Manchester Band of Pomo Industries, Inc. v U.S., 363 FSupp. 1238, 1249 (N.D. Cal. 1973).

The record is clear that a repudiation of any "trust" had not only occurred at the time the U.N. Trusteeship Agreement was signed, but the adverse position of the United States was well known to the plaintiff's predecessors as early as 1944. The position of the United States and the Trust Territory Government has never changed in the last 41 years. There has never been a misconception on the part of the plaintiff and the predecessors in title of the position of the United States and the Trust Territory. The United States took the plaintiffs' property in 1944 and it has been used for governmental and public use ever since.

If this is truly a trust relationship, this is a classic case of a beneficiary sitting on his trust rights.

---

Compounding the confusion that has developed over the plaintiffs' claims is the assertion that the plaintiffs are entitled to damages from the date of taking in 1944 to the present for the use of the land. The appellate court has affirmed the dismissal as to the Commonwealth Government and MPLC. Yet is is conceded that those entities were transferred the land in dispute by the TTPI several years ago and the TTPI has relinquished any claim it has to the land.

The length of time in bringing this suit far exceeds the longest statute of limitations in the Commonwealth (20 years - 7 CMC 2502). The plaintiffs and their predecessors knew of the breach of any trust or fiduciary relationship in 1944 and ever since. The plaintiffs and their predecessors have not shown they were under any incapacity since May 28, 1951, the date the Trust Territory Code established for the accrual of any cause of action previously existing. 6 TTC 310; 7 CMC 2510. The interest of the landowners was presently enjoyable and not a future interest. The plaintiffs have given no reason for the long delay in bringing suit. Indeed, the plaintiffs produced no evidence whatsoever at the trial explaining the delay in suing the Government. The Government has changed its position in improving the property by constructing a public highway and developing rights of way for utilities. Over the years vital witnesses have died. The hardship to the Government (and to the public at large) as compared to the plaintiffs is much greater because of the establishment of a major roadway to serve the northern part of the island which has been used for that purpose for many years.

The Restatement, Trusts, Second, § 219 lists all of these elements as determinative in finding laches in a suit by a beneficiary against a trustee. Each and everyone of these elements bars plaintiffs' suit against the Government.

It is therefore concluded that even if a trust relationship was existing between the plaintiff and defendant, laches bars any recovery by the plaintiff.

In order to decide all factual issues even though the court finds no liability on the part of the defendant and should another appeal be lodged, the court finds that the co-plaintiff, Santiago Tudela, does not own lot 007 B 06. This lot was sold to the Japanese firm of N.K.K. and became vested in the government pursuant to the vesting order which placed title in Japanese land in the Trust Territory Government.

Lastly, at the date of taking (stipulated to be October 1, 1944) the value of the land was 6¢ a square meter. Only lot 007 B 04 consisting of .604 hectare was taken from the plaintiff and therefore $362.40 is the amount that would have been due the plaintiff had suit been timely filed.

The court rejects the theory of plaintiff's expert that by some process of using present day values the award should be $199,000.00.

Should there be a finding of any damages due plaintiff, it is concluded that the plaintiff is entitled to 6% simple interest on $362.40 from October 1, 1944 to October 6, 1976 and from thereon at the rate of 9% simple interest to the date of payment. 7 CMC 4101.

This memorandum opinion shall constitute the findings of fact and conclusions of law of the court. Judgment shall be entered accordingly. Each party shall bear their own costs.

Dated at Saipan, CM, this 2nd day of August, 1985.

_____
Robert A. Hefner, Chief Judge

269